UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                       )<br>)<br>CARLOS MARRERO                  ) | CRIMINAL NO. 05-30017-MAP |

DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER
BY DISTRICT COURT JUDGE

Defendant, Carlos Marrero, moves, pursuant to 18 U.S.C. § 3145(b), that the District Court revoke the order detaining him.  See Memorandum and Order of Detention, Docket No. 22, as modified by Electronic Order dated 1/5/2006.  As grounds for this motion, defendant states that there are conditions that would both reasonably assure the safety of the community and reasonably assure that he will appear in court as required.

**STATEMENT OF FACTS**

Procedural History

Marrero was charged on April 14, 2005 by indictment with two counts of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841.  He was arrested on April 15, 2006; at his initial appearance the government moved for detention and Magistrate Judge Neiman allowed the motion without prejudice to a later motion for release.  Marrero thereafter moved for conditional release.  See Docket No. 18.  Magistrate Judge Neiman denied the motion after hearing and issued a Memorandum and Order

dated July 25, 2005 setting forth the reasons for the denial. See Docket No. 22.

On December 20, 2005, Marrero again moved for release, offering additional surety to insure defendant's appearance. See Docket No. 41. The government opposed. See Docket No. 43. On January 5, 2006, Magistrate Judge Neiman again denied Marrero's motion for release. In his electronic Order, Judge Neiman wrote:

> In essence, the court finds that the additional conditions of release offered by Defendant (over and above what had been previously offered), namely, a $50,000 bond of his parents secured by their home in Florida and a $5,000 personal surety bond of Defendant's brother, will not assure the safety of the community or Defendant's appearance in court when required. The court also doubts the source of funds which enabled Defendant to procure his residence in Chicopee, Massachusetts, which he again offers as security. Further, the court reiterates the fact that Defendant faces a statutory minimum of life in prison were he to be convicted. . . . In the court's estimation, Defendant's extensive criminal history, as well as his lack of any real employment history, mitigates against the likelihood of any such success.

Order of January 5, 2006. Marrero now appeals this decision.

Personal History

Mr. Marrero is a 36 year-old U.S. citizen who has lived in Springfield since the age of 20. He was born in 1969 in Puerto Rico, the third of three siblings. Mr. Marrero's biological father, Rafael Marrero, died when Mr. Marrero was an infant. He was raised by his mother, Alicia Ramos, and step-father, Cruz Curvas, in New York City . The entire family has remained in the

continental United States since that time; his oldest brother Rafael lives in Holyoke and his other brother lives with their parents in Florida.

Mr. Marrero attended John Jay High School in Brooklyn, New York. During the same period, unfortunately, Mr. Marrero became involved in the street life of Brooklyn and wound up with legal difficulties that resulted in his abandonment of his educational opportunities. Sadly, those difficulties followed him when he moved to the Springfield area in 1991 and Mr. Marrero has spent significant periods of time incarcerated.

Upon his most recent release from incarceration, however, Mr. Marrero met and has now maintained a continuos relationship with Shelly Rivera, a relationship that has endured for four years and is still close despite Mr. Marrero's arrest and detention for the last year. Mr. Marrero has undertaken the role of de facto step-father to Ms. Rivera's three children: Justin, age 17; Jason, age 12, and Norbert, age 8. The couple also has a three and one-half year-old son, Carlos Marrero, Jr. Ms. Rivera is supportive of Mr. Rivera despite his arrest and will welcome Mr. Marrero back to the marital home at 71 Prospect St. in Chicopee.

Mr. Marrero and Ms. Rivera have owned the current home in Chicopee for eighteen months, having obtained it with a down payment of $50,000 and a mortgage of $132,750. As explained more

fully below, that down payment was provided by Ms. Rivera's stepmother as a personal loan to the couple. As a result, the couple faces a substantial monthly mortgage payment as well as substantial debt service to family members.

The Detention Hearing

Magistrate Judge Nieman conducted a detention hearing on July 19, 2005. The government proffered a strong circumstantial case which included consensually monitored telephone calls and videotaped and audiotaped surveillance. Trial will require, however, the testimony of a cooperating witness presently facing federal sentencing to detail the actual purchases of the substances at issue.

The investigation and use of the cooperating witness involved many different targets around Springfield. As a result, Mr. Rivera was not immediately arrested after the last transaction with the informant. Rather, the government prepared indictments and, in Mr. Marrero's case, did not arrest Marrero until nearly a year later.

**ARGUMENT**

I.  THE MAGISTRATE-JUDGE ERRED IN ORDERING DETENTION.

    A.  The Magistrate Judge Erred in Determining that There Were No Conditions of Release that Would Reasonably Assure the Safety of the Community Were Mr. Marrero Released.

The Memorandum and Order on the Government's Motion for Detention concludes that Judge Neiman was "not convinced" that there were conditions which would "sufficiently mitigate[]" the risk of danger to the community.  See Docket No. 22 at 6. Despite recognizing that strict conditions of release "can serve as a reasonable guard against that risk," id. (citing United States v. Patriarca, 948 F.2d 789, 794 (1st Cir. 1991), Judge Neiman did not engage in any substantive discussion of why home detention with electronic monitoring would not serve as a sufficient safeguard against any danger to the community. Instead, Judge Neiman's Memorandum solely addressed his concern that the proffered collateral would be sufficient insurance that Mr. Marrero would remain in Massachusetts - a consideration unrelated to the danger to the community.  See Id. at 7.  See also Order of January 5, 2006 (conclusorily rejecting proffered additional collateral as insufficient to ensure the safety of the community).  Similarly, the government's opposition is bereft of any explanation - factual or legal - of why home detention

enforced by electronic monitoring would be insufficient to eliminate the risk of danger to the community.

The Bail Reform Act provides, in relevant part, for release of defendants on personal recognizance "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If personal recognizance is found insufficient to reasonably assure the appearance of the defendant or will endanger the safety of the community, then the judicial official is directed to order pretrial release on "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of . . . the community." 18 U.S.C. § 3142(c)(1). Detention is permitted only if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety . . . of the community." 18 U.S.C. § 3142(e).

> The statutorily mandated progression from one choice to the next is critical: a judicial officer cannot determine that a detention hearing and the possible imposition of pretrial detention is appropriate merely by determining that release on personal recognizance will not 'reasonably assure' the defendant's appearance at trial or 'will endanger' the community. The judicial officer must also consider whether one of the codified conditions or any combination of the

>     conditions will 'reasonably assure' the defendant's
>     appearance and the safety of the community.  The wide
>     range of restrictions available ensures, as Congress
>     intended, that very few defendants will be subject to
>     pretrial detention.

United States v. Orta, 760 F.2d 887, 890-91 (8th Cir. 1985) (reversing detention order despite applicability of statutory presumption based on drug charge).

Detention is not justified because a person presents any risk of danger to the community.  The presence of a risk requires a further analysis:  the determination of what condition or combination of conditions would reasonably assure that the community would not be endangered by a defendant's release.[1] That analysis was not performed in this case.

A proper analysis of the risk of further danger to the community would have revealed that risk to the community, were Mr. Marrero released under strict conditions including home detention, is exceedingly low.  There is no allegation that the drug activity at issue - or indeed, any criminal conduct - was connected to the Chicopee (or any other address) where Mr. Marrero and Ms. Rivera lived with their children.  Moreover, Mr. Marrero's now extended detention has functionally rendered him

---

[1] The Bail Reform Act suggests a panoply of conditions that might be imposed in conjunction with release, including requirements that a defendant work, reside at a specific address, and/or be intensively monitored.  See 18 U.S.C. § 3142.  The Magistrate Judge did not address the effect of any of these less-restrictive alternatives.

persona non grata in any community that engages in illegal activity, rendering the likelihood that he could return to that source of income exceedingly low.  Finally, the Magistrate Judge appeared to rely heavily upon an inference that the source of the funds with which the home was bought was suspect - an inference which, as demonstrated below, was factually incorrect.

In any event, whatever inference of risk that may be drawn is easily remedied by imposition of the less restrictive conditions suggested by the statute such as house arrest and intensive monitoring by Pretrial Services.  In these circumstances, the Magistrate Judge erred in failing to adequately consider alternative conditions.

> B. The Magistrate-Judge Erred in His Finding that the Defendant's Significant Ties to Springfield and His Family's Willingness to Post Substantial Collateral Were Outweighed By the Risk He Might Abscond.

As to Marrero's risk of flight, the Memorandum conceded that Marrero has substantial ties to the Springfield area, where he has lived since 1991 and where his fiancé, Shelly Rivera, their son, and Ms. Rivera's three other children reside with him.  See Docket No. 22 at 5.  Detention was nevertheless warranted, according to the Magistrate Judge, because "the bottom line is that Defendant himself risks little financially if he were to flee" and he faces a possible mandatory life sentence if convicted.  Id. at 6.  When Marrero proffered additional

-8-

collateral, Judge Neiman also questioned the genesis of the funds which enabled Mr. Marrero and Ms. Rivera to procure their residence in Chicopee. Order of January 5, 2006.

First, the judge's analysis ignores the quality of the respective ties. Defendant's entire family, including his only child, are all long-term and lifetime residents of Massachusetts who are extremely unlikely to follow him out of the district were he to decide to abscond. Defendant has a home he owns with his wife in Chicopee and all of his close and extended family members are in the immediate vicinity and in Florida.

Secondly, the Magistrate Judge's concern about the genesis of the various sureties, particularly the Chicopee home, was misplaced. As the attached documents show, the equity in the Chicopee home was purchased with personal loan to the couple from Ms. Rivera's step-mother, Miriam Andino. Ms. Andino's notarized letter attesting to the loan is attached hereto as Exhibit A. Ms. Andino, in turn, was able to provide the funds to the couple as the result of a settlement of a lawsuit in favor of her son, Jason Bermudez. Bank and Law Office records demonstrating the genesis of the funds are attached hereto as Exhibit B.

In sum, the collateral proffered before the Magistrate Judge and now before this Court is substantial and is provided unhesitatingly by those who best know Marrero. The family's trust in Marrero's promise to attend to his responsibilities to

this Court is compelling. In these circumstances the collateral - comprising over $100,000 in secured funds - in conjunction with electronic monitoring and intensive supervision is more than sufficient to ensure Marrero's continued appearance before this Court.

> B. The Magistrate-Judge did not Make the Finding Necessary to Support Detention.

The Memorandum concludes simply that "there are no conditions or combination of conditions that could be imposed to assure" the defendant's appearance in court because of the possible sentence and the "record of defaults." Memorandum at 10. That conclusion is inadequate to justify detention and applies an erroneous legal standard to the government's motion for detention.

As in risk of danger to the community, the Bail Reform Act provides for release of defendants on personal recognizance "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required[.]" 18 U.S.C. § 3142(b). If personal recognizance is found insufficient to reasonably assure the appearance of the defendant, then the judicial official is directed to order pretrial release on "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as

required[.]"  18 U.S.C. § 3142(c)(1).  Detention is permitted only if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required[.]"  18 U.S.C. § 3142(e).

Consequently, detention is not justified because a person presents a risk of nonappearance.  A risk of nonappearance requires a further analysis:  the determination of what condition or combination of conditions would reasonably assure the appearance of the person.  See Orta, 760 F.2d at 890 (judicial officer must also consider whether one of the codified conditions or any combination of the conditions will 'reasonably assure' the defendant's appearance).  That analysis was not performed in this case.  The Magistrate-Judge's memorandum misjudged the strength of the defendant's family ties to Springfield, and only superficially addressed the adequacy of any alternative conditions, and neither drew nor justified a conclusion that they were inadequate.

Had the analysis required by § 3142 been conducted, it would have resulted in a conclusion that reporting to and monitoring by Pretrial Services would reasonably assure against any risk of flight.

REQUEST FOR HEARING

Defendant respectfully requests a hearing on this motion.

>                    CARLOS MARRERO
>                    By His Attorney,
>
>
>                    /s/ Timothy G. Watkins
>                    Timothy G. Watkins
>                      B.B.O. #567992
>                    Federal Defender Office
>                    408 Atlantic Avenue, 3rd Floor
>                    Boston, MA  02110
>                    Tel: 617-223-8061

CERTIFICATE OF SERVICE

   I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 17, 2006.

*Linda Thompson*

1/10/06

To Whom it May Concern

I Mikiso Andino Loan my Stepdaughter and my Son-n-Law, Shelly Rivera & Carlos Marrero $35,000 dollar in the year of 2003 To purchase a Home The Money was From a Lawsuit of My Son Jason B Bermudez with the agreement of payment plan of $300.00 a Month unit payment is pay in full.

If you have any Further Question Please Conact My at 718-843-4176 OR 1-347-489-2474

Sincerly You
*Mikiso Andino*
*Jason R Bermudez*

Sworn To Before Me
This 10 Day of Jan 2006
The County of Queens
In The State Of N.Y.

*[Notary signature]*
1/10/06

KAISUR RAHMAN
Notary Public, State of New York
No. 41-5000980
Qualified in Queens County
Commission Expires August 17, 2006



## Personal Banking Statement

Period: 11/13/03 to 12/09/03
Page: 1 of 3
Enclosures: 0

10170
-S9--G

JASON B BERMUDEZ
11502 109TH AVE
SOUTH OZONE PARK, NY 11420-1203

### Summary of Accounts

| Account Type | Account No. | Assets | Loans | Credit Available |
|---|---|---|---|---|
| Priority Savings | ▇▇▇▇▇▇▇ | 24,146.98 | | |
| TOTAL | | 24,146.98 | .00 | .00 |

### New Account By Phone

Now you can open new checking, savings, CDs and Money Market accounts right over the phone without ever going into a branch. Simply call us toll-free at 1-800-CALL-BNY to open accounts 24 hours a day, seven days a week, so pick the time that's most convenient for you.

### Priority Savings

Activity                                                          Account No. 697-6438343

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 11/13 | OPENING BALANCE | | | 52,269.18 |
| 11/19 | ATM WITHDRAWAL THE BANK OF NY 103-48 LEFFERTS BL RICHMOND H NY 11/18/03 | 340.00- | | 51,929.18 |
| 11/21 | WITHDRAWAL | 6,000.00- | | 45,929.18 |
| 11/24 | WITHDRAWAL | 20,000.00- | | 25,929.18 |
| 11/24 | NYCE WITHDRAWAL NORTH FORK BAN 103-42 LEFFERTS BL RICHMOND H NY 11/24/03 | 201.75- | | 25,727.43 |
| 11/25 | NYCE WITHDRAWAL NORTH FORK BAN 114-19 LIBERTY AVE RICHMOND H NY 11/25/03 | 81.75- | | 25,645.68 |
| 12/01 | NYCE WITHDRAWAL NORTH FORK BAN 114-19 LIBERTY AVE RICHMOND H NY 11/30/03 | 501.75- | | 25,143.93 |
| 12/05 | NYCE WITHDRAWAL NORTH FORK BAN 114-19 LIBERTY AVE RICHMOND H NY 12/04/03 | 501.75- | | 24,642.18 |
| 12/05 | NYCE WITHDRAWAL NORTH FORK BAN 103-42 LEFFERTS BL RICHMOND H NY 12/05/03 | 501.75- | | 24,140.43 |
| 12/08 | INTEREST CREDITED | | 6.55 | 24,146.98 |

1-888-3354C (10/01)



| DATE | MEMO | AMOUNT OF WITHDRAWAL | AMOUNT OF DEPOSIT | INTEREST CREDITED | BALANCE |
|---|---|---|---|---|---|
| 10/14/03 | Deposit | | 139,269 55 | | 139,269 55 |
| 10/20/03 | Withdrawal | 30,000 | 39,269 55 | | 109,269 55 |

```
Rx Date/Time     JAN-10-2006(TUE) 13:06        718 738 2824                      P.003
   01/10/2006  12:19    718-738-2824        P.M.P.  INC                      PAGE  03
```

**EDELMAN & EDELMAN, P.C.**

                                                               **50095**

| DATE | INVOICE NO | COMMENT | AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|
| 10/10/03 | 10/10/03A | NET PROCEEDS | 139,269.55 | .00 | 139,269.55 |

```
CHECK: GEORGE  10/10/03  JASON BERMUDEZ                       CHK TOTAL: 139,269.55
```